IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD LOPEZ, III, | § | |
| TDCJ #1614126, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-0508 |
| | § | |
| DR. DEMSAS ABAY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

State inmate Edward Lopez, III (TDCJ #1614126) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the medical care he has received while in custody. Lopez has named Dr. Demsas Abay and his employer, the Conroe Medical Center, as defendants. Lopez proceeds *pro se* and he has been granted leave to proceed *in forma pauperis*. After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that this case must be **dismissed** for reasons that follow.

## I.     BACKGROUND

Lopez is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Travis County State Jail Unit in Austin, Texas. He states that he has been in and out of TDCJ several times and has

been incarcerated there since January 8, 2010.  Doc. #10, p. 2.  As outlined briefly below, Lopez's claims concern Dr. Abay's medical care and treatment while Lopez was his patient at the Conroe Medical Center.

Lopez explains that he began experiencing difficulties in his abdominal area while he was in county jail awaiting trial during August and September of 2009.  *Id.* at 3.  Lopez states he requested an appointment with a physician on several occasions, but was rebuffed by the nurses who saw him first at the jail, and later at TDCJ.  *Id.*  The TDCJ nurses consulted with the Galveston Hospital Unit via the internet and instructed him to try various medications based on their diagnoses which included heart-burn, indigestion, and ulcers.  *Id.*  Each time, they assured him that he would see a doctor if the prescribed remedies did not work.  Lopez contends that the nurses could not diagnose his ailment although he admits they did see him on numerous occasions.  *Id.* at 6.  He also states that he was given numerous medications including Tetracycline, Bismuth, Metronduzula [sic] although the treatments were not effective.  *Id.* at 7.

Lopez's condition took a turn for the worse by early 2011, and he began defecating, urinating, and vomiting blood on February 22, 2011.  *Id.* at 4.  A prison sergeant alerted a nurse who examined Lopez and observed that the area around his liver was swollen.  Believing that Lopez's liver was about to rupture, the nurse called

2

for paramedics who rushed Lopez by ambulance to the Conroe Medical Center where he was placed under Dr. Abay's care. Lopez was diagnosed as having a ruptured gall bladder which was surgically removed on February 24, 2011. *Id.* at 5. Lopez states that Dr. Abay had to obtain approval from the TDCJ hospital in Galveston before performing the operation. *Id.* at 9.

After the surgery, Dr. Abay told Lopez that he wanted to put him on a regimen of antibiotics because there was still bacteria in his stomach area which could spread to his other organs. *Id.* at 2. Dr. Abay also stated the antibiotics might not be available at TDCJ and that he wanted to keep him at the hospital three more days for treatment. *Id.* However, a correction officer named Johnson told the doctor that he was not authorized to keep Lopez for more than 24 hours after surgery. *Id.* Lopez states that Dr. Abay was "not thrilled" when he was told that he could not keep Lopez but agreed to release him on February 25, 2011, after TDCJ officials convinced him that TDCJ had the antibiotics or would obtain them for Lopez. *Id*. at 6, 9. Lopez was then transported back to TDCJ to recover from his operation.

On February 28, 2011, Lopez was rushed back to the Conroe Medical Center where he was diagnosed with obstructive jaundice by Dr. Abay who placed him on antibiotics from February 28 until March 4, 2011. *Id*. at 4. Lopez recovered and has

not suffered any long term injury that interferes with his daily activities. *Id.* at 7. He now works on a travel crew installing modular furniture. *Id.* at 7-8.

Lopez contends that he should have been treated at the TDCJ Hospital in Galveston when he first started experiencing the pain and swelling. *Id.* at 5. He also contends that Dr. Abay denied him medical treatment because the doctor allowed TDCJ to take him back to the unit after the operation despite telling Lopez that he needed antibiotics treatment to get rid of the bacteria. *Id.* at 5. Lopez contends that Dr. Abay "pretty much knew" that TDCJ did not have the proper antibiotics but allowed the prison officials to pressure him into releasing Lopez from the hospital on February 25 . Doc. # 10, p. 8. He contends that Dr. Abay harmed him by submitting to the prison officials' demands instead of following his professional judgment.

Lopez seeks monetary compensation for his pain and suffering. Doc. # 1, p. 3. The Court concludes that the complaint must be dismissed for reasons discussed below.

## II.  STANDARD OF REVIEW

This civil action is subject to review under 28 U.S.C. § 1915(e)(2)(B), which applies to all litigants proceeding *in forma pauperis*. Under this statute, a district court "shall dismiss" any *in forma pauperis* action under § 1915(e)(2)(B) if the court determines that the complaint is: (1) frivolous or malicious; (2) fails to state a claim

upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. In conducting this analysis, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A court may dismiss a complaint as frivolous under § 1915(e)(2)(B) "if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citation omitted)). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must liberally construe the allegations of a *pro se* complaint. *Erickson*, 551 U.S. at 94; *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). However, the plaintiff must assert sufficient facts to support a claim, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## III.    DISCUSSION

Lopez's complaint is governed by 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate first, a violation of the Constitution or of federal law; and second, that the violation was committed by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005) (internal citations omitted). Lopez's facts indicate that Dr. Abay is a private physician who worked under contract with TDCJ to provide medical care for Lopez. *See* Doc. 10, p. 9. Consequently, Dr. Abay is considered a state actor who is entitled to qualified immunity because his actions are fairly attributable to the state. *Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v. Atkins,* 487 U.S. 42, 49–50 (1988)). Qualified immunity protects government employees against claims

brought against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S at 818) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

This protection is extended to "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is applicable regardless of whether a government official's reasonable error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). The official is immune from suit if the law at the time of the constitutional violation does not give him fair notice that the conduct is unlawful. *Manis*, 585 F.3d at 846 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Determining whether a public official is entitled to qualified immunity entails a two-part inquiry by the reviewing court. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The first prong of the analysis asks whether, taken in the light most

favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *See id.* at 815-16; *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). There is no mandatory sequence that the court must follow in applying the two parts of the qualified immunity test. *Pearson*, 555 U.S. at 236.

As outlined above, Lopez takes issue with Dr. Abay's decision to release him back to the care of TDCJ after operating on him to remove his gall bladder. Even under a liberal construction of the pleadings, however, the complaint must be dismissed because Lopez fails to allege facts showing that he was denied adequate medical care in violation of the Eighth Amendment.

"Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical

malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to demonstrate that prison officials or health care workers "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12.

Lopez states that his gall bladder condition was serious and required immediate medical attention. He admits that the nurses and other health care workers responded to his complaints but had difficulty diagnosing his problem. When they finally discovered the specific ailment and realized the seriousness of his condition, they sent him immediately by ambulance to a hospital where he was treated by Dr. Abay shortly after he arrived there. Lopez does not challenge Dr. Abay's decision to remove his gall bladder, an act which may have saved his life. His complaint concerns Dr. Abay's decision to return him to TDCJ within a day of the operation. Lopez infers that Dr. Abay hesitated to do so because he knew that Lopez needed special antibiotics to combat the residual infections from the burst gall bladder. However, Lopez states that

TDCJ officials assured and persuaded Dr. Abay that Lopez would be provided with the appropriate medications when they returned him to the prison.

Lopez's allegations do not indicate that Dr. Abay deliberately decided to withhold treatment. He argues that Dr. Abay violated his rights by agreeing to allow TDCJ officials to monitor his recovery and administer the necessary medications. A prisoner's disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Decisions related to "forms of treatment," which include prescribing medication and the proper dosage, are matters that involve "medical judgment" on the part of the examining physician. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Lopez's allegations indicate that Dr. Abay released him to the prison officials because he believed they would provide him with adequate care.

Accepting Lopez's allegations to be true, he does not allege facts showing that he was denied care and he does not otherwise demonstrate that Dr. Abay intentionally treated him incorrectly with wanton disregard for a serious medical condition. Lopez contends that Dr. Abay "pretty much knew" (Doc. 10, p. 8) that TDCJ did not have the proper antibiotics when he released him but Lopez presents no facts to support a

claim that Dr. Abay actually knew that the antibiotics were not available. It is not enough to assert that the doctor should have known that there was a serious risk to Lopez's health and that he failed to take reasonable steps to protect him after the operation. *See Lawson v. Dallas County*, 286 F.3d 257, 262 -263 (5th Cir. 2002) (citing *Farmer,* 511 U.S. at 834; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996)). Lopez cannot infer that Dr. Lopez was deliberately indifferent to his safety by merely implying that he should have known that TDCJ would not have the proper medication. *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (A state actor's failure to alleviate "a significant risk that he should have perceived but did not," while "no cause for commendation," does not rise to the level of deliberate indifference) (quoting *Farmer,* 511 U.S. at 837 ). He must show that the doctor had actual knowledge of the risk. *Id. See also Whitley v. Hanna*, — F.3d —, 2013 WL 4029134, \*6 (5th Cir. Aug. 8, 2013). There are no facts showing that Dr. Lopez knew that Lopez would not get the drugs he needed.

Even if Lopez showed that Dr. Abay's decision was the result of bad professional judgment, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Estelle*; *see also Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Allegations of negligence and medical malpractice will not suffice to

demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."). Thus, Dr. Abay's decision, although it may have been ill informed, is not actionable. *Gobert*, 463 F.3d at 347. Dr. Abay cannot be held liable under the Eighth Amendment even if he were grossly negligent in believing the prison officials' statements about the level of care and quality of medications that would be provided for Lopez by the prison medical system. *Thompson v. Upshur County*, TX 245 F.3d 447, 459 (5th Cir. 2001) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996)).

Lopez states that he was immediately returned to the Conroe Medical Center when he did suffer a relapse at the prison. He also states that, upon returning, Dr. Abay immediately put him on antibiotics which apparently were effective because Lopez was able to recover without any long term effect from the infection. Lopez only has a right to basic medical care, not the best care available. *See Shepherd v. Dallas County*, 591 F.3d 445, 455 n.3 (5th Cir. 2009). Although there may have been a lapse in the medication, TDCJ officials and Dr. Abay took immediate steps to rectify the situation and Lopez has not shown that he was knowingly subjected to a serious health risk which resulted in any permanant harm. *Mayweather v. Foti*, 958 F.2d 91

(5th Cir. 1992). Lopez's allegations concerning the level of care that he received are not sufficient to demonstrate deliberate indifference or to articulate a violation of the Eighth Amendment. *See Domino,* 239 F.3d at 756. Similarly, Conroe Medical Center cannot be held liable because Lopez has failed to show that his rights were violated and because the Center is a private hospital and not a state actor. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 -243 (5th Cir. 1999).* Accordingly, Lopez's complaint must be dismissed for failure to state a claim.

## IV.     CONCLUSION AND ORDER

Based on the foregoing, it is **ORDERED** that the complaint in this case is **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

**The Clerk is directed to provide a copy of this order to the parties. The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to:: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and (2) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas, on <u>September 26</u>, 2013.

*[signature]*
Nancy F. Atlas
United States District Judge